FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 DEC 17   AM 9: 37

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LISA HUBER | * | CIVIL ACTION |
| versus | * | NO. 01-2452 |
| TENET HEALTHSYSTEM MEMORIAL MEDICAL CENTER, INC., d/b/a | * | SECTION "T" |
| MEMORIAL MEDICAL CENTER | * | MAGISTRATE 2 |

## MOTION TO DISMISS
## (AND INCORPORATED MEMORANDUM)

Defendant, Tenet HealthSystem Memorial Medical Center, Inc., d/b/a Memorial Medical Center ("Memorial"), through undersigned counsel, files this Motion, appearing specially to move for dismissal of this lawsuit. Defendant respectfully submits that this case should be dismissed because the parties have agreed to a valid and enforceable arbitration provision that covers the allegations made by Plaintiff, Lisa Huber. Plaintiff is unopposed to the granting of this Motion to the extent the parties retain their right to obtain judicial review of the arbitration award as allowed by law.

1    Plaintiff filed suit against Memorial on August 1, 2001, asserting claims related to her employment with Defendant Memorial. Plaintiff alleges that Memorial unlawfully terminated her in violation of the Family Medical Leave Act (FMLA).

2.    Plaintiff's claims are subject to arbitration pursuant to the Employee Acknowledgment

Form signed by Plaintiff on March 9, 1998, in which Plaintiff agreed to submit to arbitration any and all claims that are related in any way to Plaintiff's employment with Memorial. (See Exh. 1, Tenet Fair Treatment Policy; Exh. 2, Plaintiff's Acknowledgment Form).

3.      Section 3 of the Federal Arbitration Act provides that when claims are properly referable to arbitration, upon application of one of the parties, the Court shall stay the trial of the action until arbitration is complete. 9 U.S.C. §3.   However, where all of the issues raised in the complaint must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement, *dismissal* of the cause, rather than imposing a stay, is appropriate. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)(stating "the weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"); Emeronye v. Caci Int'l, Inc., 141 F.Supp. 2d 82, 88 (D.D.C. 2001). See also, Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001); see also, e.g., Barker v. Golf U.S.A., Inc., 154 F.3d 788 (8th cir. 1998) (affirming district court's dismissal of complaint on grounds that claims were properly subject to arbitration). See Exhibit 3 as evidence of other courts which have dismissed cases pursuant to arbitration agreements.

4.      In this case, all of Plaintiff's claims fall within the purview of the arbitration agreement in the Employee Acknowledgment Form signed by Plaintiff on March 9, 1998, and must be submitted to binding arbitration

5.      Accordingly, the Defendant moves to dismiss this action with prejudice.[1]

---

[1]      Dismissal of this suit with prejudice does not affect the right of any party to obtain judicial review of the arbitration award as allowed by law.

WHEREFORE, Memorial prays that its Motion be granted and that the above captioned proceeding be dismissed with prejudice.

Respectfully submitted,

*Elizabeth Pugh*

S. MARK KLYZA  (#02028)
ELIZABETH B. PUGH (#27044)
The Kullman Firm
A Professional Law Corporation
1600 Energy Centre
1100 Poydras Street (70163)
P. O. Box 60118
New Orleans, Louisiana  70160
Telephone:  (504) 524-4162
Facsimile:   (504) 596-4189
COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 17th day of December, 2001, served a copy of the above and foregoing pleading and proposed order upon all counsel of record by placing same in the United States mail, postage prepaid, addressed as follows:

William M. McGoey, Esq.
Evans & Clesi, PLC
336 Lafayette Street, Suite 200
New Orleans, LA 70130

Patricia E. Pannell, Esq.
10113 Hyde Place
River Ridge, LA 70123

*Elizabeth Pugh*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT O F LOUISIANA

| | | |
|---|---|---|
| LISA HUBER | * | CIVIL ACTION |
| versus | * | NO. 01-2452 |
| TENET HEALTHSYSTEM MEMORIAL MEDICAL CENTER, INC., d/b/a | * | SECTION "T" |
| MEMORIAL MEDICAL CENTER UNITED STATES DISTRICT COURT | * | MAGISTRATE 2 |

## O R D E R

Considering the foregoing motion to dismiss the above captioned action and allow it to be submitted to binding arbitration,

IT IS ORDERED that all claims in the captioned action be dismissed with prejudice.

New Orleans, Louisiana, this _____ day of _____, 2001.

_____
United States District Judge

# Tenet Open Door Policy
# and
# Fair Treatment Process

### For Resolution of Problems,
### Concerns and Disputes

Tenet believes that positive employee relations and morale can be best achieved and maintained in a working environment that promotes ongoing and open communication between supervisors and employees, including open and candid discussions of employee problems, concerns and disputes. Tenet utilizes an *Open Door Policy* designed to encourage its employees to openly express their problems, concerns and opinions on any issue related to their employment.

Tenet sincerely hopes that you will never have a dispute relating to your employment with the company. However, Tenet recognizes that disputes sometimes arise between an employer and its employees relating to the employment relationship. Tenet believes that it is in the best interests of both its employees and the company to resolve those disputes in a forum that provides the fastest, least expensive and fairest method for resolving them. Therefore, in addition to the Open Door Policy, Tenet has established the *Fair Treatment Process ("FTP")*, a comprehensive mechanism for resolving employment-related disputes between you and the company. The FTP is a multiple-step process that ultimately provides for final and binding arbitration of employment-related disputes if they are not resolved in any of the previous steps in the process. Tenet employees can use the *Open Door Policy* and the *Fair Treatment Process* without fear of retaliation or reprisal.

#### Application and Coverage

The FTP applies to all employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with the company or the termination of employment. The only disputes or claims not covered by the FTP are those listed in the "Exclusions and Restrictions" section below. Examples of the type of disputes or claims covered by the FTP include claims for wrongful termination of employment, breach of contract, employment discrimination, harassment or retaliation under the Americans With Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and its amendments or any state or local discrimination laws, tort claims, or any other legal claims and causes or action recognized by local, state or federal law or regulations. *Your decision to accept employment or to continue employment with the company constitutes your agreement to be bound by the FTP. Likewise, the company*

EXHIBIT

1

1

*agrees to be bound by the FTP.* This mutual agreement to arbitrate claims means that both you and the company are bound to use the FTP as the only means of resolving employment-related disputes and to forego any right either may have to a jury trial on issues covered by the FTP. However, no remedies that otherwise would be available to you or the company in a court of law will be forfeited by virtue of the agreement to use and be bound by the FTP.

### The Steps

You are encouraged to first use the company's informal Open Door Policy to discuss any problems, concerns or disputes you may have with your supervisor. If this informal method does not resolve the issue, then you are encouraged to initiate the more formal Fair Treatment Process described below to resolve the issue. The FTP consists of the following five steps that employees generally must follow to obtain a resolution of a problem, concern or dispute:



During Steps 1 through 4 of the FTP, neither you nor the company may be represented by legal counsel, although both you and the company have the right to consult privately with your own counsel at any time at your own expense.

### Step 1: *Supervisor*

If an informal discussion with your Supervisor did not resolve your problem, concern or dispute, you should promptly contact the Human Resources Department to

obtain a *FTP Dispute Resolution Form.* You should complete the form and submit it to your supervisor to initiate the FTP. The supervisor will investigate the problem and will attempt to resolve it. The supervisor will respond to you in writing on the form as soon as possible, usually within seven calendar days from the date you raised the issue. However, in situations where your problem relates to the supervisor, or you do not feel comfortable talking to the supervisor about the problem for any reason, you may consult with a representative of the Human Resources Department for guidance and go directly to *Step 2* in the process.

### Step 2: *Department Head*

If you are not satisfied with the supervisor's response to the problem or dispute in *Step 1*, then you may take the problem or dispute to your Department Head. If you wish to pursue this second step in the FTP, you should complete the Section marked "Step 2" on the FTP Dispute Resolution Form and submit the completed form to the Human Resources Department and request that the form be submitted to your Department Head. The Human Resources Department then will submit the FTP Dispute Resolution Form to your Department Head for consideration and response. Your Department Head will discuss the problem with both you and your supervisor and will attempt to resolve it. A written response from your Department Head will be provided to you as soon as possible, usually within seven calendar days of the date the Department Head receives your completed FTP Dispute Resolution Form.

### Step 3: *Administration*

If the response from your Department Head in *Step 2* does not resolve your problem or dispute, you may take the problem or dispute to a member of the Facility's Administration office for consideration. If you wish to pursue this third step in the FTP, you should contact the Human Resources Department and request that your FTP Dispute Resolution Form be submitted to Facility Administration for review. The Human Resources Department will submit the FTP Dispute Resolution Form to the appropriate member of Facility Administration for consideration and response. A written response from Administration will be provided to you as soon as possible, usually within seven calendar days of the date you request review under *Step 3*.

### Step 4: *FTP Committee*

If the response of Facility Administration in *Step 3* does not resolve your problem or dispute, you may request that the problem or dispute be submitted to the *FTP Committee*. The FTP Committee will be convened and administered by the Human Resources Department, and usually is the final step in the internal dispute resolution process that is utilized only when the problem could not be resolved during Steps 1, 2 or 3. When the matter is submitted to the FTP Committee, the FTP Committee will meet as

soon as possible, usually within 30 days of your request. The FTP·Committee will promptly, objectively and confidentially decide the issue(s) presented to it for consideration. The FTP Committee is discussed in more detail in the "FTP Committee Process" section, below.

Once the problem or dispute has been submitted to the FTP Committee, the Committee will review the facts and make a decision based on the application of company policy and procedure, and may award back pay, where appropriate. It also has the authority to decide whether or not a company policy or procedure has been followed. However, the FTP Committee does not have the authority to discipline employees, modify benefit plans, establish or change company policies or procedures, or award monetary (compensatory or punitive) damages, nor does the decision of the FTP Committee have the effect of setting precedent. The decision of the FTP Committee is subject to review by the Chief Executive Officer of the facility.

The grievances of facility management employees at the Department Head level or above and Corporate management employees are not subject to the FTP Committee process in Step 4. Those grievances are processed according to the steps set forth in the "Exclusions and Restrictions" section, below.

### Step 5: *Final and Binding Arbitration*

If you do not accept the decision reached in *Step 4*, then you have the right to submit the problem or dispute to final and binding arbitration. The arbitration process is limited to disputes, claims or controversies that a court of law would be authorized or have jurisdiction over to grant relief and that·in any way arise out of, relate to or are associated with your employment with the company or the termination of your employment. In such cases, an impartial and independent arbitrator – chosen by agreement of both you and the company – will be retained to make a final decision on your dispute or claim, based on application of company policies and procedures and applicable law. The arbitrator's decision is final and binding on you and the company. The arbitration process is discussed in more detail in the "Arbitration Process" section below:

### The FTP Committee Process

*Committee Composition:* The FTP Committee will consist of five facility employees, and will be chaired by a Human Resources Representative appointed by the Divisional Human Resources Department. The Chairperson will convene the FTP Committee meeting and will serve as the facilitator for the meeting. The Chairperson is not a voting member of the FTP Committee.

*Committee Selection:* Five facility employees will be randomly selected jointly by you and the facility representative, with the assistance of the Human Resources Department, to serve on the FTP Committee. Three of the Committee members must be non-management employees,

and two must be management employees. To ensure objectivity, the FTP Committee members should not be in the same department as the affected employee, should not be familiar with the dispute or have a close relationship with any of the parties or personnel involved in the dispute.

*Committee Proceedings:* The proceedings of the FTP Committee will be informal and conducted in accordance with the following guidelines:

a) The Chairperson will convene the meeting, introduce the parties, state the issues to be decided and present any pertinent information, including an explanation of the company policies and procedures involved, if necessary.

b) Each party will be permitted to present his or her case to the FTP Committee in accordance with such guidelines as to duration and manner of presentation as the Chairperson has established and communicated to the parties before the hearing.

c) Any party may present evidence in support of its position, including relevant documents and the testimony of witnesses; but a party may not present the testimony of more than three witnesses unless the Committee decides that there is good cause to allow additional witnesses. The Committee will determine what evidence it will consider and the weight such evidence will be given. The Committee may permit a party to submit a written statement at the FTP Committee meeting setting forth his or her position and the evidence supporting it.

d) At any time during the FTP Committee meeting, after the initial opening statement by both parties, the Committee members may ask questions or request information from the parties or from the witnesses.

e) Immediately following the FTP Committee meeting the Committee members will convene in private to discuss the case and vote by secret ballot or by open vote on the issues presented. The Committee decision shall be determined by a majority vote (3 of 5). The Committee's responsibility shall be to carefully evaluate the facts presented and reach a decision based on those facts.

f) If the FTP Committee decides that it needs additional information during its deliberation in order to reach a decision, it may hear additional testimony and/or consider additional documents.

g) Once a decision has been reached by the FTP Committee, the FTP Committee meeting will be reconvened and, with the parties present, the Chairperson will announce the decision. Alternatively, the decision of the Committee may be communicated to the affected employee by telephone or mail without reconvening the Committee. The Human Resources Department will ensure that all actions required to implement the decision of the FTP Committee are carried out promptly.

*Committee Members:* The FTP Committee process is an opportunity to participate in a process intended to ensure that employee issues are resolved in a prompt, fair and equitable manner. Employees who serve as FTP Committee members are required to accept the important responsibilities of Committee membership. The issues presented may have serious and long lasting consequences for all persons involved. All employees selected to serve on a FTP Committee must acknowledge their solemn responsibility to (1) render an objective and unbiased decision that is based only on the facts presented and the application of company policies and procedures, (2) maintain strict confidentiality and not disclose any of the information learned during the process, and (3) participate fully in the FTP Committee process.

## The Arbitration Process

If you want to appeal the decision reached in Step 4 of the process, you must obtain and complete a "Request for Arbitration Form" from the Human Resources Department in order to initiate the arbitration process. That form also will serve to confirm your and the company's prior mutual agreement to submit the dispute to final and binding arbitration. The arbitration will be heard by an independent and impartial arbitrator chosen by you and the company. By deciding to arbitrate the dispute, you also agree that the remedy, if any, ordered by the arbitrator will be the only remedy as to all matters that are or could have been raised by you in the arbitration.

The arbitrator's responsibility is to determine whether company policies and procedures and applicable law have been complied with in the matter submitted for arbitration. In fulfilling this responsibility, the arbitrator may interpret company policies and procedures, but will not have any power to change them. The arbitrator will be requested to render a decision on the matter within 30 days after the arbitration hearing is concluded and post-hearing briefs, if any, are submitted.

The arbitration will be administered by the American Arbitration Association ("AAA"). The company and you will share the cost of the AAA's filing fee and the arbitrator's fees and costs, but your share of such costs shall not exceed an amount equal to one day's pay (for exempt employees) or eight times your hourly rate (for non-exempt employees). You and the company will be responsible for the fees and costs of your own respective legal counsel, if any, and any other expenses and costs, such as costs associated with witnesses or obtaining copies of hearing transcripts.

## Exclusions and Restrictions

Certain issues may not be submitted for review (or exclusive review) under the FTP ("Excluded Issues"). Other issues may be subject to special restrictions ("Restricted Issues").

*Excluded Issues:* Workers' Compensation Claims, any claim involving the construction or application of a benefit plan covered by ERISA, and claims for unemployment benefits are excluded from the FTP. In addition, any non-waivable statutory claims, which may include wage claims within the jurisdiction of a local or state labor commissioner or administrative agency charges before the Equal Employment Opportunity Commission or similar local or state agencies, are not subject to exclusive review under the FTP. This means that you may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if you wish, regardless of whether you decide to use the FTP to resolve them. However, if such an agency completes its processing of your action against the company, you must use the FTP if you wish to pursue your claim (although Steps 1 through 4 may be skipped). In addition, the FTP does not apply to employees covered by a collective bargaining agreement, unless otherwise agreed to by such employees. The FTP also does not apply to claims by the company for injunctive relief and/or other equitable relief for unfair competition and/or the use of unauthorized disclosure of trade secrets or confidential information, relief for which may be sought in court.

*Restricted Issues:*

*Sexual Harrassment Complaints:* Due to the sensitive nature of claims of sexual harassment, you are not required to use Step 1 of the FTP to raise sexual harassment claims if you do not wish to do so. Instead, you should follow the steps in the company's policy prohibiting sexual harassment. If you are not satisfied with the company's response to a claim for sexual harassment, then you must use the FTP to resolve the claim or dispute.

*Grievances of Management Employees:* Facility management employees at the Department Head level or above will use the following FTP steps to submit their grievances for review: *Step 1:* Immediate Supervisor; *Step 2:* Chief Executive Officer of the facility; *Step 3:* Regional Vice President; *Step 4:* Request for Arbitration. Facility Chief Executive Officers and management employees in the divisional or corporate offices will use the following FTP steps to submit their grievances for review: *Step 1:* Immediate Supervisor; *Step 2:* The next level in the chain of command; *Step 3:* The next level in the chain of command; *Step 4:* Request for Arbitration.

## Other Important Information

*Applicable Law and Procedural Rules:* The Federal Arbitration Act, 9 U.S.C. § 1, et seq., will govern arbitrations under the FTP. The applicable Employment Dispute Resolution Rules of the AAA will govern the procedures to be used in such arbitrations, unless you and the company agree otherwise.

*Discovery and Amendment of Claims:* If a dispute is submitted to arbitration, either you or the company may make a reasonable request for copies of relevant documents

from each other, and both parties shall provide each other
with a list of the witnesses they intend to call to testify at
the arbitration at least ten days before the arbitration. No
dispositions or other discovery shall be taken unless ordered
by the arbitrator. Disputes submitted for resolution under
the FTP may be amended as provided by the AAA rules.

*Limitations Periods:* Any request for arbitration under
the FTP must be made within one year after the event giv-
ing rise to the dispute. If the claim was submitted to a feder-
al, state or local agency, then a request for arbitration of that
claim must be made within 90 days of the receipt of the
agency's decision. However, if a longer limitations period is
provided by a statute governing your claim, then your claim
will be subject to the longer limitations period provided by
the statute.

*Authority of Arbitrator:* The arbitrator has the authority
to award any remedy that would have been available to you
had you litigated the dispute in court under applicable law.

*Representation by Counsel:* During Steps 1 through 4
of the FTP, neither you nor the company may be represented
by legal counsel, although both you and the company have
the right to consult privately with your own counsel at any
time at your own expense. Both you and the company may
be represented by counsel at arbitration during Step 5 at
each parties' own expense. Generally, the company will be
represented by legal counsel at arbitration. The company
will not provide legal advice to employees, but it strongly
encourages employees to consult with independent legal
counsel of their own choosing if they have any questions
about whether they should be represented by legal counsel
at arbitration or any other issue related to the arbitration.

*Confidentiality:* All statements and information made
or revealed during the FTP are confidential, and neither you
nor the company may reveal any such statements or infor-
mation, except on a "need to know" basis or as permitted or
required by law.

*At-Will Employment:* Nothing in the FTP shall be con-
strued to create a contract of employment, express or
implied, nor does the FTP in any way alter the at-will nature
of the employment relationship between you and the com-
pany.

*Modifications to the FTP:* The company will not modi-
fy or change the agreement between you and the company
to use final and binding arbitration to resolve employment-
related disputes without notifying you and obtaining your
consent to such changes. However, the company may
change or modify the FTP procedures from time-to-time
without advance notice and without the consent of employ-
ees.

If you have any questions about the Fair Treatment
Process, please contact your supervisor or the Human
Resources Department.

Rev. 12/95TH115FORM/177305

8

# EMPLOYEE ACKNOWLEDGMENT FORM

I acknowledge that I have received a copy of the Tenet Employee Handbook and Standards of Conduct and that I understand that they contain important information about the company's general personnel policies and about my privileges and obligations as an employee. I further understand and acknowledge that I am governed by the contents of the Employee Handbook and Standards of Conduct and that I am expected to read, understand, familiarize myself with and comply with the policies contained in them.

I also understand that the company may change, rescind or add to any of the policies, benefits or practices described in the Employee Handbook, except the employment-at-will policy and the Mutual Agreement to Arbitrate referred to below, in its sole and absolute discretion, with or without prior notice. I also understand that the company will advise employees from time to time of material changes to the policies, benefits or practices described in the Employee Handbook.

Furthermore, I understand, acknowledge and agree that the Employee Handbook is not a contract of employment, that my employment with the company is not for a specified term and that employment with the company is at the mutual consent of the employee and the company. Therefore, I hereby acknowledge that either I or the company can terminate my employment relationship at will, with or without cause or notice.

In addition, I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").

I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative costs of the AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee), and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both me and the Company.

_Lisa B. Huber_     _3-9-98_
Employee Signature     Date

_LiSA B. Huber_
Employee Name (please print)

**DETACH FOR HUMAN RESOURCES FILE**

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

[illegible stamp] D.C.

01 JUN 13 PM 3:38

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN. MEMPHIS

ANNIE L. BANKS,

    Plaintiff,

vs.                                                  No. 99-3022 G/V

ST. FRANCIS HOSPITAL,

    Defendant.

---

### ORDER GRANTING DEFENDANT'S RENEWED MOTION TO STAY PENDING ARBITRATION OR ALTERNATIVELY TO DISMISS

---

On November 18, 1999, plaintiff Annie Banks brought this action against her former employer, AMISUB (SFH), Inc., d/b/a St. Francis Hospital ("St. Francis"), claiming that St. Francis violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 ("Title VII"), when it terminated her employment on August 2, 1999. Banks alleges that St. Francis fired her because of her race and because she complained of unequal terms and conditions of employment. The court now considers St. Francis' renewed motion to dismiss the complaint or, in the alternative, to stay the proceedings pending arbitration.[1]

The present motion does not require the court to address the substantive merits of Banks' Title VII claims. Rather, St.

---

[1] On January 4, 2000, St. Francis filed its original motion to stay pending arbitration or alternatively to dismiss. The court denied this motion in a September 29, 2000 order to allow further discovery regarding the enforceability of the arbitration agreement in this case. (Order Denying Mot. to Dismiss at 5.)

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 6/14/01.



EXHIBIT

3

Francis has simply requested that the court dismiss the case or
at least stay these proceedings, so the dispute can first be
submitted to arbitration.  Accordingly, the relevant facts
involve Banks' alleged assent to arbitrate any grievances she had
with her employer.

Except where otherwise noted, the following facts are
undisputed.  On June 8, 1994, Banks signed an Acknowledgment Form
printed on a perforated page of the employee handbook provided by
American Medical International (AMI), the parent company of St.
Francis at the time.  (Mem. Supp. Renewed Mot. to Stay Pending
Arbitration or Alternatively to Dismiss Ex. A.)  According to the
terms of that form, Banks acknowledged receiving her copy of the
handbook and agreed to arbitrate all complaints arising out of
her employment with St. Francis:

> I understand AMI makes available arbitration for
> resolution of grievances.  I also understand that as a
> condition of employment and continued employment, I
> agree to submit any complaints to the published process
> and agree to abide by and accept the final decision of
> the arbitration panel as ultimate resolution of my
> complaint(s) for any and all events that arise out of
> employment or termination of employment.

Id.

AMI subsequently merged with another company to become Tenet
HealthSystem Medical, Inc. ("Tenet").  (Mem. Supp. Renewed Mot.
to Stay Pending Arbitration or Alternatively to Dismiss at 2;
Mem. Supp. Resp. to Renewed Mot. to Stay Pending Arbitration or
Alternatively to Dismiss at 1.)  St. Francis and other Tenet-
owned hospitals distributed a new Employee Handbook, which
contained an arbitration agreement that was similar to the one in
the AMI Handbook.  (Mem. Supp. Renewed Mot. to Stay Pending

2

Arbitration or Alternatively to Dismiss at 2-3; Mem. Supp. Resp. to Renewed Mot. to Stay Pending Arbitration or Alternatively to Dismiss at 1.)  On July 27, 1999, Banks signed an Acknowledgment Form that was printed on a perforated page of the Tenet Handbook, thereby acknowledging receipt of a Tenet handbook and ostensibly agreeing to the terms therein  -- including the arbitration agreement.  (Mem. Supp. Renewed Mot. to Stay Pending Arbitration or Alternatively to Dismiss Ex. C.)  Specifically, the form provided:

> In addition, I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure.  I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet.  I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to

represents "a congressional declaration of a liberal federal
policy favoring arbitration agreements," Moses H. Cone Mem. Hosp.
v. Mercury Const. Corp., 460 U.S. 1, 24 (1983), by promulgating
that

> a written provision in . . . a contract evidencing a
> transaction involving commerce to settle by arbitration
> a controversy thereafter arising out of such contract
> or transaction, or the refusal to perform the whole or
> any part thereof, or an agreement in writing to submit
> to arbitration an existing controversy arising out of
> such a contract, transaction, or refusal, shall be
> valid, irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the revocation
> of any contract.

9 U.S.C. § 2.  In conjunction with this legislative dictate, the
U.S. Supreme Court has held that "[b]y its terms, the Act leaves
no place for the exercise of discretion by a district court, but
instead mandates that district courts shall direct the parties to
proceed to arbitration on issues as to which an arbitration
agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd,
470 U.S. 213, 218 (1985).

Although arbitration agreements should be "rigorously
enforce[d]," id. at 221, courts should not apply them blindly.
As the Court has noted, "passage of the Act was motivated, first
and foremost, by a congressional desire to enforce agreements
into which parties had entered."  Id. at 220; see AT&T Tech.,
Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986)
(explaining that "arbitration is a matter of contract and a party
cannot be required to submit to arbitration any dispute which he
has not agreed so to submit"); Steelworkers v. Warrior & Gulf

---

employee, constitute interstate commerce contracts and are thus governed by
the terms of the FAA.

4

Nqvington Co., 363 U.S. 574, 582 (1960) (same). "Accordingly,
the first task of a court asked to compel arbitration of a
dispute is to determine whether the parties agreed to arbitrate
that dispute." Mitsubishi Motors Corp. v. Soler
Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). In making
this query, the court nevertheless keeps in mind that "[t]he
Arbitration Act establishes that, as a matter of federal law, any
doubts concerning the scope of arbitrable issues should be
resolved in favor of arbitration, whether the problem at hand is
the construction of the contract language itself or an allegation
of waiver, delay, or a like defense to arbitrability." Moses H.
Cone Mem. Hosp., 460 U.S. at 24-25; see also Wilson Elec.
Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167,
169 (6th Cir. 1989) (emphasizing and reiterating the Moses
presumption).

Generally, there are two types of arguments that parties can
make in arguing that an arbitration clause does not apply to
their dispute. They can argue either that an arbitration clause
is invalid and thus unenforceable, or that their particular
dispute does not fall within the scope of the arbitration
agreement. Obviously, these approaches are mutually exclusive:
the former contests the validity of the arbitration clause,
whereas the latter acknowledges its validity but suggests that
the clause does not apply to the case at hand.

In the case at hand, Banks does not argue that the
arbitration clause in the Acknowledgment Form she signed on July

5

27, 1999, is inapplicable to her claims.[3]  Rather, she contends
that the arbitration agreement itself is invalid, either because
she only signed the Form, and correspondingly the agreement to
arbitrate, under duress, or alternatively because the arbitration
agreement was a contract of adhesion.  Specifically, she claims
that she visited the personnel department at St. Francis to pick
up an Employee Handbook after the personnel director told her
that she needed to follow the procedures in the Handbook if she
wanted to file a complaint.  (Banks Aff. ¶ 2.)  When she asked
for a copy of the Handbook, she was allegedly told that she could
not get one unless she signed an Employee Acknowledgment Form
acknowledging that she received a copy.  (Banks Aff. ¶ 3.)  Banks
admits that she did sign such a form, but argues that she only
did so "[a]fter realizing that [she] could not get the employee
handbook without signing the form." (Banks Aff. ¶ 4), and without
reading any of the other pages of the handbook first.  (Banks
Aff. ¶ 3.)

        Section 4 of the FAA requires a federal court to compel
arbitration "upon being satisfied that the making of the
agreement for arbitration or the failure to comply therewith is
not at issue."  9 U.S.C. § 4.  The United States Supreme Court
has interpreted this statutory language as distinguishing between
those issues dealing with the formation of an agreement
containing an arbitration clause and others involving the

---

[3] "[A]rguments which suggest that something inherent in Title VII
precludes the enforcement of valid arbitration agreements in circumstances
where the FAA is otherwise applicable was [sic] rejected in Gilmer [v.
Interstate/Johnson Lane Corp., 500 U.S. 20 (1991)]." Willis v. Dean Witter
Reynolds, Inc., 948 F.2d 305, 312 (6th Cir. 1991).

formation of the clause itself:

> If the claim is fraud in the inducement of the
> arbitration clause itself - an issue which goes to the
> "making" of the agreement to arbitrate - the federal
> court may proceed to adjudicate it.  But the statutory
> language does not permit the federal court to consider
> claims of fraud in the inducement of the contract
> generally.

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-

04 (1967).  While the Court's language in Prima Paint is

specifically directed at claims of fraud and subsequent Sixth

Circuit cases have utilized the Court's holding in that context,

see Moses v. Business Card Express, Inc., 929 F.2d 1131, 1138

(6th Cir. 1991); Arnold v. Arnold Corp., 920 F.2d 1269, 1278 (6th

Cir. 1990), there is no reason that the same principles should

not apply to claims of duress.  In other words, a party to an

agreement containing an arbitration clause must present a well-

founded claim that the clause itself was induced by duress to

avoid arbitration.  Consequently, to avoid arbitration, Banks

must demonstrate that the arbitration agreement contained within

the Acknowledgment Form she signed on July 27, 1999, was itself

procured by duress.

Banks, however, has not made such a showing of duress.

Under Tennessee law,[4] duress is defined as "a condition of mind

produced by the improper external pressure or influence that

---

[4] To address Banks' claim of duress, the court must look to Tennessee
law:  "When deciding whether the parties agreed to arbitrate a certain matter
(including arbitrability), courts generally . . . should apply ordinary
state-law principles that govern the formation of contracts."  First Options
of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see Floss v. Ryan's
Family Steak Houses, Inc., 211 F.3d 306, 314 (6th Cir. 2000) ("In deciding
whether [arbitration] agreements are enforceable, we examine applicable state-
law contract principles.").

7

practically destroys the free agency of a party, and causes him
to do and act or make a contract not of his own volition, but
under such wrongful external pressure." _Simpson v. Harper_, 111
S.W.2d 882, 886 (Tenn. Ct. App. 1937) (quoting _Pride v. Baker_, 64
S.W. 329, 332 (Tenn. Ch. App. 1901). Put another way, the court
is required to ask, "Was the person so acted upon by threats of
the person claiming the benefit of the contract, for the purpose
of obtaining such contract, as to be bereft of the quality of
mind essential to the making of a contract, and was the contract
thereby obtained?" _Exum v. Washington Fire & Marine Ins. Co._,
297 S.W.2d 805, 808-09 (Tenn. Ct. App. 1956). While the court is
required to consider "all attendant facts and circumstances,"
including the age, sex, intelligence, experience, and force of
will of the party in question, _Simpson_, 111 S.W.2d at 886, the
facts currently before the court do not suggest that Banks was
subjected to such external pressure as to be bereft of her free
will when she signed the Acknowledgment Form on July 27, 1999.
Unlike cases in which Tennessee courts have found duress, Banks
was not subject to any explicit or implicit threats, and was free
to leave the Personnel Office without signing the Acknowledgment
Form. _See e.g._, _Exum_, 297 S.W.2d at 620 (finding that a release
"executed under an implied threat of prosecution or public charge
of arson," where "the complainant was in the custody of the Fire
Marshal and not free to go at will," was signed under duress).
Therefore, there is no reason to believe that Banks was bereft of
her free will when she signed the Acknowledgment Form, and
consequently that the provisions within it, including the
agreement to arbitrate, should be unenforceable.

8

Banks has also claimed that the arbitration agreement is an unenforceable contract of adhesion.  An adhesion contract is

> a standardized contract form offered to consumers of goods or services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract.

Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996) (quoting Black's Law Dictionary 40 (6th ed. 1990)).  As one Tennessee court noted, however, "even if it could be said arguendo [that an agreement] was an adhesion contract, that does not ipso facto render it void and unenforceable."  E.B. Harvey & Co., Inc. v. Protective Sys., Inc., 1989 WL 9546, at *4 (Tenn. Ct. App. Feb. 10, 1989).  "Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable," Buraczynski, 919 S.W.2d at 320, and an arbitration agreement is not usually considered to be oppressive.  See, e.g., id.  Similarly, the arbitration process called for in the agreement signed by Banks utilizes "an impartial and independent arbitrator - chosen by agreement of both [the employee] and the Company," (Mem. Supp. Renewed Mot. to Stay Pending Arbitration or Alternatively to Dismiss Ex. D), and gives no unfair advantage to St. Francis.  Consequently, the court cannot find that the arbitration agreement, even if it is an adhesion contract, is oppressive and thus unenforceable.

Banks complains that she "was never told by anyone that [she] was giving up [her] right to sue St. Francis or Tenet by

9

taking the employee handbook or by signing the form they gave
[her]."  (Banks Aff. ¶ 5.)  The Acknowledgment Form that Banks
signed, however, clearly sets forth that the [signing party]
"voluntarily agree[s] . . . to submit final and binding
arbitration any and all claims and disputes that are related in
any way to [her] employment or the termination of [her]
employment with Tenet."  (Mem. Supp. Renewed Mot. to Stay Pending
Arbitration or Alternatively to Dismiss Ex. C.)  By signing the
form, Banks agreed to its terms, whether or not she understood
them.  See Haskins v. Prudential Insurance Co., 230 F.3d 231, 241
(6th Cir. 2000) (upholding an arbitration agreement, even though
plaintiff allegedly was unaware of the scope of the arbitration
agreement when he signed it).  Therefore, having provided no
proof of fraud, duress, or some other ground for invalidating the
arbitration agreement contained within the Acknowledgment Form
she signed on July 27, 1999, Banks is bound by its terms to
arbitrate the current dispute, as it is related to the
termination of her employment with Tenet.

     Normally, when a court determines that claims before it are
more properly referable to arbitration, the appropriate
procedural step is a stay of the trial of the action, in
accordance with the FAA:

> If any suit or proceeding be brought in any of the
> courts of the United States upon any issue referable to
> arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending,
> upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under
> such an agreement, shall on application of one of the
> parties stay the trial of the action until such
> arbitration has been had in accordance with the terms
> of the agreement, providing the applicant for the stay

is not in default in proceeding with such arbitration.
9 U.S.C. § 3.  However, "[t]he weight of authority clearly
supports dismissal of the case when all of the issues raised in
the district court must be submitted to arbitration."  Alford v.
Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992);
see Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 n.21
(1st Cir. 1998); Sparling v. Hoffman Const. Co., Inc., 864 F.2d
635, 638 (9th Cir. 1988).  The Sixth Circuit has also recognized
this exception to the FAA rule, albeit in an unpublished opinion.
See Hensel v. Cargill, No. 99-3199, 1999 WL 993775, at **4 (6th
Cir. Oct. 19, 1999) (per curiam).[5]  In the present dispute, all
of the claims made by Banks fall within the purview of the
arbitration agreement in the Acknowledgment Form signed by Banks
on July 27, 1999, and must be submitted to binding arbitration.
Therefore, the court grants St. Francis' motion and dismisses
Banks' complaint accordingly.

        IT IS SO ORDERED.



                              _Julia Smith Gibbons_
                              JULIA SMITH GIBBONS
                              UNITED STATES DISTRICT JUDGE

                              _June 11, 2001_
                              DATE

_____

    [5] Although citation to unpublished Sixth Circuit per curiam decisions is
disfavored, this case is referenced "because it establishes the law governing
the present action and 'there is no [Sixth Circuit] published opinion that
would serve as well.'" Norton v. Parke, 892 F.2d 476, 479 n.7 (6th Cir.
1989)(citing 6th Cir. R. 24(b)).

                                   11

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LISA HUBER | * | CIVIL ACTION |
| versus | * | NO. 01-2452 |
| TENET HEALTHSYSTEM MEMORIAL | * | SECTION "T" |
| MEDICAL CENTER, INC., d/b/a | | |
| MEMORIAL MEDICAL CENTER | * | MAGISTRATE 2 |

## NOTICE OF HEARING

TO:   William M. McGoey, Esq.
      Evans & Clesi, PLC
      336 Lafayette Street, Suite 200
      New Orleans, Louisiana 70130

      Patricia E. Pannell, Esq.
      10113 Hyde Place
      River Ridge, LA 70123

PLEASE TAKE NOTICE that defendant's Motion to Dismiss (and Incorporated Memorandum) will be brought on for hearing before the Honorable G. Thomas Porteous, Jr. at 10 a.m. on the 16th day of January, 2001.

Respectfully submitted,

*Elizabeth Pugh*

S. MARK KLYZA  (#02028)
ELIZABETH B. PUGH (#27044)
The Kullman Firm
A Professional Law Corporation
1600 Energy Centre
1100 Poydras Street (70163)
P. O. Box 60118
New Orleans, Louisiana  70160
Telephone:  (504) 524-4162
Facsimile:   (504) 596-4189
COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that I have on this __17__ day of December, 2001, served a copy of the above

and foregoing pleading and proposed order upon all counsel of record by placing same in the United

States mail, postage prepaid, addressed as follows:

William M. McGoey, Esq
Evans & Clesi, PLC
336 Lafayette Street, Suite 200
New Orleans, LA 70130

Patricia E. Pannell, Esq.
10113 Hyde Place
River Ridge, LA 70123

*Elizabeth Pugh*